**UNITED STATES of America,
Plaintiff,**

**v.**

**633.07 ACRES OF LAND, MORE OR LESS, Situate IN HUNTINGDON COUNTY, COMMONWEALTH OF PENNSYLVANIA, Defendant.**

**Civ. No. 70–510.**

United States District Court,
M. D. Pennsylvania.

July 31, 1973.

James W. Walker, Asst. U. S. Atty., Scranton, Pa., Harry W. McKee, Joseph A. Pavone, Attys., Dept. of Justice, Washington, D. C., for United States.

Jerome A. Hoffman, Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

Three landowners have filed motions for a new trial subsequent to the assessment of damages by a jury in the amount of $16,500 as to Tract No. 745 (Jackson); $12,500 as to Tract No. 1027 (Saylor); and $9400 as to Tract No. 901 (Crotsley).

The landowners raise five contentions which we shall consider seriatim.

As to each of the tracts in question the government introduced exhibits consisting of photographs of the subject property and the comparable properties used by the government's expert to support his conclusion of fair market value. In the margin of the posterboards upon which the subject photographs were placed notations were made as to date of purchase and the purchase price of the comparable sales. All three landowners contend that the court committed reversible error when we admitted these exhibits into evidence because the notations contained thereon did not adequately and fairly represent the testimony of the government's expert.

The government expert, Bowers, appraised the Crotsley property (Tract 901) at $9000, or approximately $1000 an acre. In formulating this appraisal Bowers utilized the actual sales of three comparable properties. Crotsley contends that only as to the comparable which sold for $1000 an acre did the government add the acreage to the notations in the margin of its exhibits. As to the other two comparables which the landowner contends sold for $1650 an acre, the acreage was excluded. In regard to the Saylor and Jackson properties, the notations on the exhibit contained only the date of purchase and the purchase price of the government's comparables without disclosing the differences in acreage and water frontage; and as to the Saylor property the exhibit failed to disclose that the 1967 purchase price of one of the government's comparables was fixed by an option executed in 1962.

The court has examined the questioned exhibits and concludes that their admission into evidence was not reversible error. The exhibits were not admitted as substantive evidence but only as summaries of the testimony of

Bowers. If the summaries do not contain all of the information impeaching the opinion of the expert whose testimony they reflect, their admission into evidence is not *a fortiori* reversible error. The dissimilarities of the government's comparables are matters properly raised through cross-examination of the government's expert. However, we do not find it essential that the government's exhibit summarizing its expert's testimony reflect the dissimilarities brought out by the landowner on cross-examination before the court can admit it into evidence. We think it sufficient that the information actually contained in the notations was accurate. If the landowner wished to emphasize certain facts concerning the sale of the comparables not disclosed on the government's exhibit, he was free to do so during cross-examination, and in summation to the jury. The government points out that of the three comparables used to support its appraisal of the Crotsley property only one was sold by acreage, the other two consisted of cottages situate on lots of less than one acre in size. It is for this reason that the government did not include the acreage on its notations with regard to these comparables.

Landowner Crotsley contends that it was improper to allow the government to cross examine him as to the price he paid for the condemned property in 1961: the testimony was assertedly improper because the transaction was too remote in time from the declaration of taking and because the transaction was not a cash sale but consisted of $1500 in cash plus $2500 due and owing Crotsley for prior services rendered to the seller.

■■■ Considering the dates of other comparable sales used by both the government and landowners in the tracts in question and other tracts situate in the project, the purchase by Crotsley in 1961 was not too remote in time to be admissible. The admissibility of evidence of the price paid by the landowner as well as sales of comparable property are matters within the discretion of the trial judge. Because one of the landowner's appraisers himself utilized a transaction which occurred in 1963 as a comparable, the 1961 sale of the subject property was clearly admissible. The fact that the transaction occurred nine years before the declaration of taking and six years before the project was announced go to the weight of the evidence and not its admissibility, United States v. Becktold Co., 129 F.2d 473 (8th Cir. 1942); likewise, the fact that the price paid for the subject property reflected the payment of a pre-existing debt was a matter which went to the weight of the testimony as reflecting upon the property's market value. If the $4600 purchase price were admitted without explanation as to the circumstances surrounding the transaction, we have no doubt that reversible error would have been committed. However, the sale was a bona fide and voluntary transaction and the landowner was freely allowed to explain the circumstances under which the purchase was made. We find no reversible error.

■■ Crotsley also attempted to admit a subdivision plan which divided his land into building lots. The plot plan was not admitted into evidence although Crotsley was allowed to testify as to the price he thought the property would sell for as a site for recreational land development. The court exercised its discretion to exclude the plan because it was drawn up in 1961, was never recorded, and was speculative in nature inasmuch as the landowner, after the expiration of a number of years, had only staked out the outer perimeter of the subdivision and cleared very little of the land. With such a subdivision plan in front of them upon which a number of building lots have been drawn to perfection each of which could have theoretically been sold at a profit to the landowner, it would be very easy for the jury to improperly attempt to determine the number of lots the land would produce and estimate a price for each lot in determining the fair market value of the entire tract. The jury's function was to determine what a purchaser would be willing to pay for the land in its present condition,

not speculate as to what could have been done with the land in the future. The plot plan would have impeded rather than aided the jury in that function. Accordingly, in the court's considered opinion, the plot plan was properly excluded.

■ Asserted error number four is the court's refusal to allow Saylor to show motion pictures of his daughter water skiing on the river adjoining the subject property. A cursory viewing of the motion pictures revealed that only several seconds of the film depicted the property and the remainder of the film was irrelevant and its admission to the jury would have been most improper.

■ Because the verdicts as to all threc tracts were within the range of the expert testimony as to fair market value, the verdicts cannot be said to be against the weight of the evidence simply because they range closer to the government's appraisal than to the landowners'.

An appropriate order will be entered.