See also D.C., 415 F.Supp. 544.

**UNITED STATES of America, Plaintiff,**

v.

**67.59 ACRES OF LAND, MORE OR LESS, situate IN HUNTINGDON COUNTY, COMMONWEALTH OF PENNSYLVANIA, Defendants.**

Civ. A. No. 75–692.

United States District Court,
M. D. Pennsylvania.

March 16, 1978.

---

James W. Walker, Asst. U.S. Atty., S. John Cottone, U.S. Atty., Scranton, Pa., for plaintiff.

John R. Miller, Miller, Kistler, Campbell, Mitinger & Beik, Bellefonte, Pa., for landowners.

## MEMORANDUM

HERMAN, District Judge.

This is a land condemnation case involving 67.59 acres of land situated in Huntingdon County, Pennsylvania, which the United States Government acquired from the Condemnees, Daniel C. Morningstar and his wife, Martha Morningstar, for part of the Government's Raystown Lake Project. The case was tried before a jury, and on September 28, 1977, the jury returned a verdict in the amount of $60,500. The Condemnees filed a timely motion for a new trial raising as grounds therefore the following alleged trial errors: (1) that the verdict was in the exact amount testified to by the chief witness for the Government and, therefore, the verdict was contrary to the evidence, and the jury completely ignored other evidence submitted by the Condemnee; (2) that the trial Court erred in refusing to allow in evidence the plot plan which had been prepared and recorded by the Condemnee prior to the date of condemnation (3) that the Court erred in refusing to permit the Condemnee, Daniel C. Morningstar, to testify as to separate values of the improvements which were erected on the condemned property; (4) the expert appraiser for the United States utilized the report from another expert, Edward Heary, without furnishing to the Condemnees a copy of the expert's report ten days prior to trial. The Condemnees also generally aver that the verdict is contrary to the law and to the evidence. For the following reasons the Condemnees motion for a new trial will be denied.

The jury's verdict was $60,500, exactly the property value testified to by the Government's expert on real estate appraisal. The Government's expert testified that in his opinion the comparable sales used by the owner and his expert appraiser were purchased for subdivision and resale and were enhanced in value by the Government project for which the Morningstar property was being taken. He testified as to comparable sales which he felt did not reflect any enhancement in value because of the project. It was his opinion that the property was typical of other rural property in the area with its two full-time residences and a pine nursery and he felt that there was no real market for lots in this area without the new Raystown Lake Project and he realized that the valuation in this proceeding must be unaffected by any enhancement from the new project. Basically, it was his opinion that the highest and best use for the subject property was that to which it was being put at the time and as he described.

One of the property owners, Mr. Morningstar, testified extensively as to his use of the property. He testified about its proximity to the old Raystown Dam and to the recreational developments on the Juniata River prior to the Government project. He

further testified to what he envisioned as the potential development of his property had it not been condemned. He also was permitted to testify to comparable sales of property. After considering all of these factors, and given his knowledge of his property's worth as its owner, he concluded that the value of the portion of his property taken on the date of condemnation, June 12, 1975, was $189,515.

The Morningstars' real estate appraiser testified that in his opinion the highest and best use of the subject property was subdivision for country home living. He also testified as to comparable sales which he used in arriving at his valuation of the condemned property at the time of condemnation, and as unaffected by the impending Government project. He gave his opinion as to value at $125,000.

■ The law is well settled that the United States does not pay the amount by which the land condemned for a project might be enhanced in value by the very project for which the land is needed. *United States v. Reynolds,* 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970). The owners of the land are entitled to the fair market value of the property at the time of the taking as unaffected thereby. *United States v. Miller,* 317 U.S. 369, 373–374, 63 S.Ct. 276, 87 L.Ed. 336 (1943).

■ It is within the sound discretion of the Court to admit the comparable sales testified to by the various witnesses and to allow the jury to determine whether the described properties were in fact comparable to the condemned tract, and if found comparable, to determine what weight should be given thereto. *United States v. 84.4 Acres Of Land, Etc.,* 348 F.2d 117, 119 (3d Cir. 1965). Although the fair market value arrived at by the jury was the same as that testified to by the Government's appraiser, the verdict was within the range of the expert testimony as to fair market value, and the verdict cannot be said to be against the weight of the evidence simply because it ranges closer to the Government's appraisal than to the landowner's appraisals. *United States v. 633.07 Acres*

*Of Land, Etc.,* 362 F.Supp. 451 (M.D.Pa. 1973).

■ It was also for the jury to hear the testimony as to highest and best use, decide for itself which was more credible, and figure that into its valuation. As stated in *United States v. Miller,* 317 U.S. 369, 375, 63 S.Ct. 276, 280, 87 L.Ed.2d 336, 343, (1943), "[T]he market value of the property is to be fixed with due consideration of all its available uses . . . ." The jury apparently found the testimony of the Government witness more credible after hearing both sides testify as to what they felt to be comparable sales and what would be the property's highest and best use. In this we can find no error, for in determining market value of condemned property, evidence as to reasonable probabilities of its use is admissable and may be considered, but the weight to be given such evidence is a question for the trier of fact. *United States v. 100 Acres Of Land, Etc.,* 468 F.2d 1261 (9th Cir. 1972), *cert. denied,* 414 U.S. 864, 94 S.Ct. 37, 38 L.Ed.2d 84.

Related to the Condemnees' argument that the verdict does not reflect compensation for the highest and best use of the condemned property is their averment that we erred in refusing to allow into evidence a plot plan which had been prepared and recorded prior to the date of condemnation. Considering all of the factors involving the plot plan it was, and still is, our considered opinion that the plot plan was so speculative in nature that the jury would have been misled had it been admitted into evidence. *United States v. 633.07 Acres Of Land, Etc.,* 362 F.Supp. 451 (M.D.Pa.1973). Although it is true that the plot plan was prepared and recorded prior to the condemnation which occurred on June 12, 1975, the plan was filed on May 14, 1975 less than a month prior to condemnation and nearly eight years after the initial announcement of the Government project in 1967. The plot plan had been prepared by interpolation and had not been surveyed. It was exclusively within the property designated for taking and there had been no out sales at the time of the condemnation. Although

there admittedly was good frontage on a legislative road there were no roads or other amenities such as water supply or sewage disposal facilities constructed on the property in anticipation of or in connection with the supposed subdivision plan.

The Condemnees further aver that the Court erred in refusing to permit one of the Condemnees, Daniel C. Morningstar, to testify as to separate values of improvements which were erected on the condemned property. The witness was permitted to fully describe these improvements and it was for the jury to consider the value of the land with improvements as described in the testimony. It would have been improper to value the land and the buildings and improvements as separate and independent entities distinct from each other, and then to total the unit values together to arrive at a final opinion of value. *Kinter v. United States*, 156 F.2d 5 (3d Cir. 1946).

The Government's expert real estate appraisal witness testified that in making his appraisal of the condemned property he had relied on a report from a tree valuation expert with respect to figuring the value of timber and a Christmas tree nursery on the condemned property. The Condemnees' claim that the Court erred in permitting the real estate appraisal expert to testify with respect to a report he had received from another expert without a copy of the other's report having been furnished to the Condemnees ten days prior to trial. We know of no rule requiring such disclosure, and any prejudice which might have arisen was certainly eliminated by the fact that the tree expert took the stand as a witness at the trial and was subjected to cross examination.

The verdict was neither contrary to the law nor contrary to the evidence and the request for a new trial will be denied.