Mary Douglas DRYSDALE,
et al., Plaintiffs,

v.

Dorothy WOERTH, Defendant.

No. Civ.A. 99–3775.

United States District Court,
E.D. Pennsylvania.

June 8, 2001.

David E. Wagenseller, Shirk, Reist, Wagenseller & Shirk, Lancaster, PA, Daniel S. Bernheim, 3rd, Silverman, Bernheim & Vogel, Phila, PA, for Mary Douglas Drysdale, plaintiff.

Anita J. Hanna, Gibbel, Kraybill & Hess, Lancaster, PA, Dorothy Woerth, pro se, Kirkwood, PA, for Dorothy Woerth, defendant.

### MEMORANDUM AND ORDER

SMITH, United States Magistrate Judge.

This dispute arises out of a twenty-year lease agreement between plaintiffs, Mary Douglas Drysdale and Simon Hershon, and defendant, Dorothy Woerth. On April 12, 2001, following a one-week non-jury trial, the Court entered Findings of Fact and Conclusions of law holding, *inter alia,* that defendant had breached the implied covenant of quiet enjoyment and had constructively evicted plaintiffs from their property. On those grounds, we ordered that judgment was to be entered against the defendant and in favor of plaintiffs in the amount of $76,500, representing the increased value in the property due to plaintiffs' improvements. Both plaintiff

Mary Douglas Drysdale[1] and defendant have filed motions in response to this Order. Plaintiffs seek to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e), or, alternatively, for a new trial limited to damages issues. Defendant, in turn, has filed a motion for reconsideration of the Findings of Fact. For the reasons which follow, both motions will be denied.

## I. MOTION BY DEFENDANT DOROTHY WOERTH FOR RECONSIDERATION OF FINDINGS OF FACT

Federal Rule of Civil Procedure 59(e) provides that a party may bring a motion for reconsideration within ten days of the entry of the judgment. "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Continental Casualty Co. v. Diversified Indus., Inc.*, 884 F.Supp. 937, 943 (E.D.Pa. 1995). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3rd Cir.), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). Thus, such a motion must rely on one of three grounds: (1) there has been an intervening change in controlling law; (2) new evidence, which was not previously available, has become available; or (3) necessary to correct a clear error of law or to prevent manifest injustice. *United Lawn Mower Sales & Service, Inc. v. Hagel*, Civ. A. No. 95–6157, 1997 WL 327564 (E.D.Pa. June 12, 1997); *see also Smith v. City of Chester*, 155 F.R.D. 95, 96–97 (E.D.Pa. 1994). "With regard to the third ground . . . any litigant considering bringing a motion to reconsider based upon that ground should evaluate whether what may seem to be a clear error of law is in fact simply a disagreement between the Court and the litigant." *Reich v. Compton*, 834 F.Supp. 753, 755 (E.D.Pa.1993) (citation omitted), *aff'd in part, rev'd in part*, 57 F.3d 270 (3d Cir.), *reh'g denied*, (3d Cir. September 8, 1995). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of." *Moyer v. Italwork*, Civ. A. No. 95–2264, 1997 WL 312178 (E.D.Pa. June 3, 1997) (internal quotations omitted). In other words, such a motion is "not properly grounded on a request that a court rethink a decision it has already made." *Tobin v. General Elec. Co.*, Civ. A. No. 95–4003, 1998 WL 31875, *2 (E.D.Pa. Jan.27, 1998).

Defendant now asks this Court to reconsider our Findings of Fact and Conclusions of Law. Her sole argument is that the Court improperly credited much of plaintiffs' testimony and documents, discredited defendant's statements, underestimated property damage done to defendant's land and misread some of the documents. To support her cursory allegation, she asks that the Court re-review all of the evidence of this case. In addition, defendant has submitted for our consideration a large binder of evidence, some of which was admitted at trial, some of which is before us for the first time.

Defendant's motion far from satisfies the standard for a motion for reconsideration. She does not suggest that there has been an intervening change in the law. Nor does she allege that any of her additional evidence is newly-discovered. Thus, she must hang her hat on the argument that there is a manifest injustice in this Court's Findings of Fact. Having spent approximately two months carefully reviewing the evidence and then issuing a

---

1. Simon Hershon is not a party to these motions. Thus, for purposes of discussion, "plaintiff" shall refer only to Ms. Drysdale.

124–page document containing all of our Findings of Fact and Conclusions of Law, the Court is not inclined to repeat this process and rethink through facts we have already thoroughly considered. Nor can we sift through new evidence that, although in existence at the time of trial, was never admitted and may be inadmissible under the Federal Rules of Evidence. Although Ms. Woerth may justifiably disagree with the Court's factual findings, that disagreement is insufficient to prompt us to change our mind. Thus, the Court denies defendant's motion for reconsideration.

## II. MOTION BY PLAINTIFF MARY DOUGLAS DRYSDALE TO ALTER OR AMEND JUDGMENT PURSUANT TO RULE 59(e), OR, ALTERNATIVELY, FOR A NEW TRIAL LIMITED TO DAMAGE ISSUES.

### A. *Motion to Alter or Amend Judgment Pursuant to Rule 59(e).*

Plaintiff's request for a new trial is founded on an alleged error of law in the Court's awarding of damages under the theory of unjust enrichment rather than on contract principles. She argues that a binding and express contract existed in the form of the lease between the parties, thereby making an unjust enrichment theory improper. *See* Plaintiff's Brief, at p. 7 (citing *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa.Super.Ct.1999); *First Wisconsin Trust Company v. Strausser*, 439 Pa.Super. 192, 653 A.2d 688, 693 (1995); *Gee v. Eberle*, 279 Pa.Super. 101, 420 A.2d 1050, 1060 (1980)). Rather, she asserts that the proper measure of damages was the contractual measure of her reliance interest to put her in as good a position as if the contract had never been made. On this basis, she demands $253,489.60, constituting her full expenditure in renovation of the stone house.

 While basic common sense speaks to the reasonableness of plaintiff's argument, black letter contract law applied to the facts of this case dictates a different result. It is well-established that the measure and elements of damages upon the breach of a lease is governed by the general principles which determine the measure of damages on claims arising from breaches of other kinds of contracts. 49 AM. JUR.2D *Landlord and Tenant*, § 96 (1995). In the law of contracts, remedies for breach of contract are designed to protect either a party's (1) expectation interest, by attempting to put him in as good a position as he would have been had there been no breach; (2) reliance interest, by attempting to put him back in the position in which he would have been had the contract not been made; or (3) restitution interest, by requiring the other party to disgorge the benefit he received by returning it to the party who conferred it. *Trosky v. Civil Service Commission*, 539 Pa. 356, 652 A.2d 813, 817 (1995) (citing RESTATEMENT (SECOND) OF CONTRACTS § 344, comment a (1979)).

 Reliance damages include expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed. RESTATEMENT (SECOND) OF CONTRACTS § 349 (1979); *see also* 22 AM. JUR.2D *Damages*, § 50 (1988) ("The reliance interest has been defined as the interest of the nondefaulting party in the expenditures which he made or in the property which he made, transferred, or consumed in reliance on the contract."). Plaintiff has correctly noted that, "[c]ourts will allow the recovery of such expenditures if the breach of contract renders them valueless to the plaintiff, lost profits cannot be awarded because they appear

.

speculative, and those expenses were foreseeable by the defaulting party at the time the contract was made." 22 Am.Jur.2d *Damages*, § 595 (1988).

Notably, however, "[e]xpenses which are incurred prior to the time the contract was made are not recoverable either separately or in addition to profits lost because of the breach, unless it is affirmatively shown that the defendant has assumed responsibility for them." 22 Am. Jur.2d *Damages*, § 594 (1988). This rule stems from the principle that, "[t]hese expenses were not made in reliance on any promise of the defendant nor were they made in performance of the contract promise. By their nature, they were incurred before any contract was executed, and are in no way attributable to the contract or its breach." *Id.; see also* 3 E. Allan Farnsworth, Farnsworth on Contracts § 12.16, pp. 276–277 (2d ed. 1998) ("[Reliance damages] will not help the injured party who has done nothing in reliance on the contract. Nor will it allow a party to recover costs incurred *before* the contract was made") (emphasis in original). This principle comports with the purpose of the reliance interest set forth in the Restatement, which is to put the non-breaching party in the same position as if the contract had never been formed since the pre-contractual expenditures would have been spent regardless of the contract. Restatement (Second) of Contracts § 344. Indeed, the rule applies even if the expenditures were incurred directly for the purpose for which the plaintiff made the contract. 17 A.L.R.2d 1300, § 7 (Supp.2000); *see, e.g., Energy Capital Corp. v. United States*, 47 Fed.Cl. 382, 426 (Fed.Cl.2000) (recognizing the general rule that reliance damages are limited to those expenses incurred after an agreement has been reached); *Hollywood Fantasy Corp. v. Gabor*, 151 F.3d 203, 214 n. 4 (5th Cir.1998) (recognizing the general rule that the nonbreaching party may only recover out-of-pocket expenses incurred after the contract was formed); *DPJ Co. Ltd. Partnership v. F.D.I.C.*, 30 F.3d 247, 250 (1st Cir.1994) ("because reliance damages seek to measure the injured party's 'cost of reliance' on the breached contract, 'an injured party cannot recover for costs incurred before that party made the contract.' ") (citing Farnsworth, *supra* ); *Curran v. Smith*, 149 F. 945, 953 (3d Cir.1906) (following defendant's breach of contract, plaintiff was entitled to recover in reliance only those expenses in preparation for performance incurred between the execution of the contract and its breach); *Hough v. Jay–Dee Realty & Inv., Inc.*, 401 S.W.2d 545, 551 (Mo.App.1966) (expenses incurred before any enforceable obligation arose not recoverable); *Chicago Coliseum Club v. Dempsey*, 1932 WL 2782, at *4, 265 Ill.App. 542 (1st Dist.1932) (no recovery for expenses prior to signing agreement, even though expenses were in preparation for performance).

In the case at bar, plaintiff and defendant originally entered into a one-year lease, running from April 29, 1995. *See* Findings of Fact and Conclusions of Law ("Findings and Conclusions"), at ¶ 6. In November of 1996, the parties first discussed the possibility of a twenty-year lease. *Id.* at ¶ 16. Despite the fact that only five months remained in the current lease and notwithstanding the absence of any express agreement as to future lease arrangements, Ms. Drysdale immediately began substantial construction work. *Id.* at ¶ 18. After extensive negotiation, the first twenty-year lease was executed by Simon Hershon and defendant Woerth on May 4, 1996. *See Id.* at ¶ 24. However, plaintiff Drysdale was not yet a party to that contract. *Id.* A second lease, dated August 1, 1996, added plaintiff Drysdale's

name to the lease and declared the May 4, 1996 lease null and void. *Id.* As of May, 1996, all of the construction work for which plaintiff now claims damages was completed in anticipation of the twenty-year lease, *id.* at ¶ 37, a fact conceded by plaintiff. *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law at ¶¶ 15–16 and Exhibit A. Consequently, the expenses sought by Ms. Drysdale in her Rule 59(e) motion were incurred *prior* to the existence of any contract and, thus, could not have been made in reliance on the contract. Indeed, contrary to plaintiff's claim, had the contract never been made, plaintiff still would have sunk the construction expenses into the house. Because reliance damages seek to place the non-breaching party in the same position if the contract had never been signed, plaintiff cannot recover in contract for the cost of these improvements.

Plaintiff makes much of this Court's Findings of Fact involving the contract negotiations between plaintiffs and defendant to argue that defendant Woerth expressly assumed responsibility for the improvement costs in the written lease agreement. Specifically, they cite to Finding No. 23, wherein we stated as follows:

> By way of letter dated April 12, 1996, Hershon advised Woerth that the property was being improved well beyond the initial $50,000 estimate. Indeed, he notified her that, as of that date, plaintiffs had spent more than $100,000 on the house and were working toward the $200,000 mark.... This information was crucial since the lease originally included the parties' agreement that, if the property was sold, plaintiffs would get $50,000 for their investment. (T.T. Hershon). Hershon agreed that, as long as they received the full value out of the twenty-year lease, they would forego any difference between the $50,000 provision and the amount actually spent.

Findings and Conclusions at ¶ 23 (footnotes omitted). On the basis of this finding, the plaintiff argues that "Woerth had agreed to repay that investment if they did *not* receive the full twenty year term of their lease." Plaintiff's Motion at p. 5. Thus, the Court must "effectuat[e] the parties' intent and restor[e] to plaintiffs the investment which they put into the Stone House with the full knowledge, acquiescence and indeed, the full encouragement from Woerth." *Id.* at p. 6.

■■■ Plaintiff's argument, however, relies on parole evidence rather than the express terms of the lease. As we have previously recognized, a lease agreement exists in the nature of a contract, and is controlled by principles of contract law. *Warren v. Greenfield,* 407 Pa.Super. 600, 595 A.2d 1308, 1311–1312 (1991). "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Village Beer and Beverage, Inc. v. Vernon D. Cox and Co., Inc.,* 327 Pa.Super. 99, 475 A.2d 117, 121 (1984). However, "the intent of the parties to a written contract is regarded as embodied in the writing itself." *Warren,* 595 A.2d at 1311. Only where an ambiguity exists in the contract is parol evidence admissible to explain, clarify or resolve the ambiguity. *Sun Company, Inc. v. Pennsylvania Turnpike Commission,* 708 A.2d 875, 878 (1998).

■■■ The sole provisions in the lease agreement addressing improvements were as follows:

> **Alterations.** Tenant must obtain Landlord's prior written consent to paint or wallpaper the Leased Premises, or to install paneling, flooring, partitions, rail-

ings or make any other alterations. Tenant must not alter the plumbing ventilation air-conditioning, heating or electric systems. All the alterations, installations and improvements shall become property of the Landlord when completed and paid for, and shall be surrendered as part of the Leased Premises at the end of the term. Landlord is not required to pay for any of the work performed under this section unless he has agreed to pay as indicated in his written consent.

\*\*\*

Any and all improvements made by Lessee, Lessee's agents, servants, guests, heirs, assigns and all those claiming under Lessee; Must be approved of, in writing by Lessor.

\*\*\*

Any and all permanent improvements made by Lessee, Lessee's agents, servants, guests, heirs, assigns and all those claiming under Lessee, are not to be considered as any part of rent due to Lessor; but are to remain with the property at the termination of the lease.

Thus, while Ms. Woerth knew of the extent of plaintiff's expenditures on the property, she explicitly declined, by way of these provisions, to assume any responsibility for the cost of the improvements, and further indicated that plaintiff had no right to recover for any value of her improvements upon lawful termination of the lease. In light of such express and unambiguous language exonerating defendant from any liability for the improvement expenses incurred, the Court cannot consider parole evidence as to the parties' discussions and, in turn, cannot find that Ms. Woerth assumed responsibility for the improvements in the lease.[3]

When entering judgment in this case, this Court reached a crossroads as to the award of damages sought by plaintiff in her complaint. Although defendant had breached the covenant of quiet enjoyment, no contractual remedy existed for plaintiff's recovery of those improvement costs which were reasonably foreseeable by both parties. In an attempt to compensate plaintiff in some form for this loss, the Court turned to the restitutionary theory of unjust enrichment, as claimed in plaintiff's pleadings and as addressed at trial.[4]

---

**3.** Plaintiff's current motion seeks only reliance damages of $253,489.60 expended on construction in renovating the stone house. Although not an issue now, plaintiff's original complaint sought recovery of various furnishings, antiques and craft pieces purchased for use in the stone house. To the extent they were purchased prior to the lease agreement, they suffer the same fate as the pre-contractual construction. To the extent these items were purchased after the lease agreement, plaintiff, as we recognized in our Findings of Fact and Conclusions of Law, may not recover their cost since they are removable items and retain sufficient value. *See* 3 FARNSWORTH ON CONTRACTS, § 12.16, at p. 276 (injured party may recover damages based on reliance with deduction for any benefit received through salvage or otherwise); 22 AM.JUR.2D, *Damages,* § 50 (the reliance damage theory is that the expenditures were induced by reliance on the contract and were rendered worthless by its

breach). Moreover, plaintiff failed to establish that the subsequent purchase of many of these items at such outlandish costs were within the reasonable contemplation of both parties at the time the lease was executed.

Plaintiff's complaint also sought recovery for the fence and the deck installed on the property. As we recognized in our Findings of Fact and Conclusions of Law, neither item was within the contemplation of the parties at the time of contracting. By virtue of the equitable estoppel theory, we found that defendant consented to their construction. However, we also noted that the parties never reached any agreement as to their appropriate size. Thus, contract damages are not available.

**4.** The Court understood, based on the expert testimony presented at trial and the post-trial submissions from the parties, that the plaintiff

"It is a well-settled principle that the tenant is not entitled to compensation for improvements made to the leasehold in the absence of an agreement that the landlord would pay, or in the absence of a statute imposing such liability, even though the improvements are such that by reason of their annexation to the freehold they become a part of the realty and cannot be removed by the lessee." 49 Am. Jur.2d Landlord and Tenant, § 902 (1995) (footnotes omitted). There is, however, an equitable exception to this rule. Absent an agreement between the landlord and tenant regarding improvements and absent a statute imposing liability on the landlord, the tenant may recover under a quasi-contract theory of unjust enrichment. Id. Under this theory, the court may impose liability on the landlord, though the parties have not mutually assented to a contract to pay for an improvement, to prevent one party's unjust enrichment at the expense of the other. 49 Am.Jur.2d Landlord and Tenant, § 904 (1995). As explained in our Conclusions of Law, in order to establish unjust enrichment, the plaintiff must establish three elements: "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Schenck v. K.E. David, Ltd., 446 Pa.Super. 94, 666 A.2d 327, 328 (Pa.Super.Ct.), appeal denied, 544 Pa. 660, 676 A.2d 1200 (1995) (quotations omitted). Although unjust enrichment is inapplicable when the relationship between the parties is founded on a written agreement or express contract, an unjust enrichment claim may go forward when one party performs services wholly outside the scope of the contract. Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d. Cir.1987); Combustion Sys. Servs., Inc. v. Schuykill Energy Resources, Inc., Civ. A. No. 92–4228, 1993 WL 523713, *5 (E.D.Pa. Dec.15, 1993).

Courts have repeatedly exercised this option to compensate a tenant who has faced some breach of lease or inequitable conduct by the landlord. As discussed in our Findings of Fact and Conclusions of Law, the Pennsylvania Superior Court addressed a similar issue in Chesney v. Stevens, 435 Pa.Super. 71, 644 A.2d 1240 (1994). In that case, the landlord and tenants entered into a month-to-month lease for a piece of dilapidated residential property. Id. at 1241. Tenants made substantial improvements, including a new furnace, a new kitchen, new plumbing, new bathrooms, carpeting and wiring the entire house, without any request for reimbursement from the landlord. Id. at 1241–1242. Relying on an unjust enrichment theory, the trial court awarded damages in the amount that the improvements increased the value of the house. The Superior Court affirmed, finding that "if a tenant with a reasonable and good faith expectation of long-term occupancy or ownership, makes substantial and obvious improvements to the real estate of another, the tenant is entitled to compensation for the improvements when they have been accomplished with the actual or implied knowledge and consent of the owner." Id. at 1244; see also Jackson v. California Hardwood Co., Inc., 120 N.C.App. 870, 463 S.E.2d 571, 573 (1995) (allegation that tenant, under ten-year lease agreement, made substantial improvements to the land, with

---

was focusing her case on unjust enrichment theories in light of the absence of a contractual remedy. As such, the Court immediately turned to that theory without explanation of why contractual theories were rejected. Having perhaps assumed too much, we now provide that explanation by means of this opinion.

defendant's knowledge, and was wrongfully evicted sufficient to state a claim for unjust enrichment); *Mahayna, Inc. v. Poydras Center Associates,* 665 So.2d 166, 168 (La.App.1995), *writ denied,* 669 So.2d 1210 (La.1996) ("[e]ven where the lease provides that improvements are to be the property of the lessor, the lessee makes the improvements for his own use and enjoyment during the term of the lease, and at least where the lessor's action deprives the lessee of that use and enjoyment, the lessee is entitled to recover a proportionate cost of the value of the improvements contemplated by the lease.").

█ Plaintiff, in the instant matter, expended thousands of dollars on improvements on the stone house property prior to securing her twenty-year lease. Defendant knew the extent of the improvements and understood that they were to become hers at the end of the twenty-year term. As a result of her breach of the covenant of quiet enjoyment, though, defendant obtained the benefit of the improvements approximately seventeen years earlier. Because these expenditures were made outside the scope of the lease, plaintiff had no remedy in contract for these expenditures. As defendant was aware of the improvements and allowed them to proceed, the Court implied a quasi-contract to reflect defendant's unjust enrichment at plaintiff's expense. Under this quasi-contract, we awarded to plaintiff the increase in value of the property due to the improvements, *i.e.* the restitution interest. Considering the evidence before us, we reached the ultimate sum of $76,500.

In light of the foregoing, the Court rejects plaintiff's argument that, as a matter of law, the proper measure of damages was contractual reliance damages, rather than unjust enrichment. Had plaintiff made the improvements within the confines of the contract, the result may very well have been different. She did not do so. The resultant damage award in this case stemmed not from the Court's "sympathy for Woerth's financial well being"— as plaintiff presumes—but rather from our efforts to ensure plaintiff's recovery of some monetary award for her extensive improvements where the law of contracts would provide none. Thus, we deny plaintiff's motion under Federal Rule of Civil Procedure 59(e).

B. *Plaintiff's Motion for New Trial Pursuant to Rule 59(a).*

As an alternative theory of relief, plaintiff seeks a new trial on the issue of damages alone, pursuant to Fed.R.Civ.P. 59(a). Her motion has two theories. First, she alleges that the Court improperly considered the reasonableness of her expenditures when awarding damages. Second, she claims that the Court rejected the values of the property submitted by the experts and substituted its own value in arriving at its verdict. Both of these actions, according to plaintiff, require a new trial on the damage issue. The Court addresses each in turn.

█ "The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court." *Blancha v. Raymark Industries,* 972 F.2d 507, 512 (3d Cir.), *reh'g denied* (Sept. 4, 1992). Although not expressly set forth in the Rule, district courts have recognized that (1) a prejudicial error of law, (2) a verdict against the weight of the evidence, or (3) an excessively high verdict may be ground for a new trial. *Maylie v. National Railroad Passenger Corp.,* 791 F.Supp. 477, 480 (E.D.Pa.), *aff'd,* 983 F.2d 1051 (3d Cir.1992) (citing 11 Charles A. Wright & Arthur A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2805, at 38 (1973)).

■ Plaintiff first assigns error to this Court's consideration of the reasonableness of her expenditures when awarding damages. Her argument, however, relies heavily on the fact that, to the extent she was entitled to recover damages based on a reliance theory, the Court had to award such damages so long as defendant could reasonably foresee that such expenditures would be incurred in reliance on the contract. Had the Court used a contract theory of damages, plaintiff's contention may have had some merit. Damages, however, were awarded on an unjust enrichment theory, which required the Court to determine the value conferred upon defendant. *See Mitchell v. Moore*, 729 A.2d 1200, 1203 (1999), *app. denied*, 561 Pa. 698, 751 A.2d 192 (2000). To make that determination, the Court was required to consider whether her costs were equivalent to the fair market value of these items. As plaintiff put on no expert testimony to say otherwise, the Court rejected her expenditures as an unreasonable indicator of the value conferred upon defendant.[5]

■ Plaintiff's second contention claims that the Court improperly rejected the testimony of both plaintiffs' and defendant's agent and substituted its own opinion instead. This argument misunderstands the applicable law. "Credibility determinations are the unique province of a fact finder, be it a jury, or a judge sitting without a jury." *United States v. Kole*, 164 F.3d 164, 177 (3d Cir.1998), *cert. denied*, 526 U.S. 1079, 119 S.Ct. 1484, 143 L.Ed.2d 566 (1999); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Questions about credibility and weight of expert opinion testimony are also for the trier of facts since such testimony is ordi-

narily not conclusive. *See Minnesota Mining & Mfg. Co. v. Berwick Indus.*, 532 F.2d 330, 333 (3d Cir.1976) (*citing Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967, *reh'g denied*, 322 U.S. 767, 64 S.Ct. 941, 88 L.Ed. 1593); *United States v. Barton*, 992 F.2d 66, 69 (5th Cir.1993). The fact finder is free to accept or reject expert testimony as it deems proper, even if such testimony is uncontroverted. *Kelly v. Crown Equip. Corp.*, Civ. A. No. 91–1143, 1991 WL 208771, *3 (E.D.Pa. Oct.8, 1991), *aff'd*, 970 F.2d 1273 (3d Cir.), *reh'g denied*, (Aug. 5, 1992); *see also West Philadelphia Therapy Center v. Erie Ins. Group*, 751 A.2d 1166, 1169 (Pa.Super.Ct.), *reargument denied*, (Pa.Super.Ct. June 5, 2000) ("It is well noted that as a general rule, an expert's opinion testimony is treated in the same manner as other testimony—it is entitled to no special weight or value. The trier-of-fact should consider the expert's qualifications and reliability and the reasons he or she gives for an opinion.").

■ This principle applies with equal force to experts testifying as to land valuation. *See, e.g., U.S. v. 79.20 Acres of Land, More or Less, Situated on Stoddard County, Missouri*, 710 F.2d 1352, 1357 (8th Cir.1983) (The weight to be given to factual and opinion evidence on fair-market value is for the trier of fact); *U.S. v. 67.59 Acres of Land, More or Less, in Huntingdon County, Com. of Pa.*, 447 F.Supp. 844, 846 (M.D.Pa.1978) (it is within province of factfinder to consider expert testimony on valuation of land, determine weight to be given to the testimony and ultimately arrive at the appropriate valuation figure); *Chesney*, 644 A.2d at 1245 ("the weight to be given to expert testimony on valuation of land is for the trier of fact; and it is the

---

**5.** Plaintiff further argues that the Court should allow plaintiff to put on testimony as to the reasonableness of their expenses. As

plaintiff had the opportunity to do so the first time around, we do not find this to be an adequate reason to grant a new trial

province of the trier of fact to weigh the credibility of the valuation witnesses' testimony and to determine the fair value of the land."); 27 AM.JUR.2D *Eminent Domain,* § 611 (1996) ("a jury in a condemnation proceeding is not restricted to an exact formula for arriving at damages, nor is it required to accept the testimony of any particular witness as to values or as to the amount of damage incurred. Further, the jury is not limited to considering only the ultimate opinions of expert appraisers as to fair market value, but should consider and weigh all evidence in reaching its verdict.").[6]

■ In the instant matter, the Court engaged in a lengthy discussion of the testimony of the two valuation experts. *See* Conclusions of Law at pp. 105–112. We considered the reasoning of each of their opinions and ultimately reflected, in some detail, on the various flaws inherent in their logic. After enumerating, over the course of seven pages, each of the reasons why the experts' opinions were not entirely credible, we stated as follows:

> Again, the Court finds itself in a somewhat precarious position, as we lack complete confidence in either of the ex-

pert opinions regarding the valuation of the stone house. Samuels estimated an increase in value for the house as a primary residence in the amount of $10,000. Zogorski, on the other hand, found an increase in value of merely $25,000. In an effort to reconcile these two opinions, the Court draws upon its own past experience in evaluating such expert testimony, together with its familiarity with the Lancaster/Chester County region and realty principles in general. Having had the benefit of both visiting the subject premises and considering the comparable properties selected by each expert, we are mindful of the fact that, although the stone house has been improved significantly, it remains of diminutive size and sits in uncomfortably close proximity to the Woerth residence. Indeed, the intimacy between the two houses, together with its historical use, suggests that the value of the stone house lies in its integration into the workings of the farm, not as an isolated structure. In light of our observations, the Court cannot possibly imagine that a one bedroom, one bathroom house, located in the middle of a working horse farm in Lancaster County,

---

**6.** The cases cited by plaintiff in support of her position are completely inapposite. First, plaintiff points to *Dombroski v. Apfel,* 1998 WL 372551 (E.D.Pa.1998) and *Breding v. Sullivan,* 1989 WL 296726 (D.Mont.1989), to claim that a factfinder cannot substitute its opinion for that of a trained expert. Both of these cases involved a review of the opinion of an Administrative Law Judge ("ALJ") in the context of a social security matter. Unlike a civil trial, as is the case here, social security disability hearings are nonadversary, administrative matters, which are regulated by statute. The standard by which an ALJ must consider expert medical evidence is explicitly set forth at 20 CFR § 404.1527 (2000). As such, a case decided under the social security regulations has no applicability to the standard for a factfinder in a civil action.

In the third case, *Lagway v. Dallman,* 806 F.Supp. 1322, 1340 (N.D.Ohio 1992), the court criticized the trial judge in a competency proceeding for arbitrarily disregarding objectively reliable psychiatric evidence. As a primary matter, this case involved the specialized area of expert testimony of mental incapacity. Moreover, the court recognized that "expert opinion is not binding on the trier of fact if there is reason to discount it." *Id.* at 1340. It went on to note that "[an] expert's opinion, even if uncontradicted, is not conclusive," and, based on certain objective reasons, it may be ignored. *Id.* Because the trial judge in that matter offered *no* reason for discounting the expert's opinion, the court deemed his actions improper. In contrast, the Court in this case offered a lengthy discussions on the objective reasons why we declined to wholly adopt either expert's testimony.

would sell for more than $200,000—a value somewhere between those proposed by the two experts. Taking Samuels' starting basis of $120,000, defendant received an unjust enrichment of $80,000—a figure which constitutes the fair compensation to plaintiffs due to the improper termination of the twenty-year lease.

*See* Conclusions of Law at pp. 112–113.

 As such, far from completely disregarding the expert opinions, the Court carefully considered each and, upon finding neither of their highly divergent, conclusions to be entirely credible, adopted a position that fell somewhere in the middle of the two experts. In doing so, the Court relied on the evidence presented in the case, our visit to the actual property during the course of the trial, the exhibits submitted with the experts' opinions and our own common sense. Because the Court sat as the trier of fact in this matter, the ultimate conclusion of valuation fell within our province. Having reached a fair market value within the range set forth by the two experts, we also cannot say that the finding was against the weight of the evidence. To now accept plaintiff's proposition that the Court was required to adopt either one of the two expert opinions in its entirety would improperly invade on the role of the fact finder and would elevate the testimony of the expert above that of other witnesses. Indeed, "If the trier of fact is unable or disinclined to question the expert's opinion, it surrenders its central function to an expert whose testimony may be unreliable." *In re Unisys Savings Plan Litigation*, 173 F.3d 145, 167 (3d Cir.1999), *cert. denied*, 528 U.S. 950, 120 S.Ct. 372, 145 L.Ed.2d 290 (1999) (quoting Charles Alan Wright and Victor James Gold, 8 FEDERAL PRACTICE AND PROCEDURE § 6262 (1997)).

Having already thoroughly considered the expert testimony at some length, the Court finds no grounds on which to provide a new trial on the sole issue of damages. Accordingly, we deny plaintiff's motion for new trial.

2. We recognize that one, maybe two weeks of construction occurred subsequent to the signing of the May lease. However, the lion's share of the work took place prior to any written contract and we have no indication of that, if any, work took place after the May lease.